UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X

DANIIL SHEVCHENKO

**AMENDED COMPLAINT**

Plaintiff,

Docket No. 15-CV-7277

-against-

JURY TRIAL DEMANDED

THE CITY OF NEW YORK, a municipal corporation;
POLICE OFFICER JUANCARLOS PALACIOS, in his individual
and official capacity, POLICE OFFICER BRIAN CASSIDY,
in his individual and official capacity, POLICE OFFICER
JORGE SANTACRUZ, in his individual and official capacity,
POLICE OFFICER MYLES MCKENNA, in his individual and
official capacity, SERGEANT RYAN VAUTRINOT, in his
individual and official capacity, and LIEUTENANT WILLIAM
MEYER, in his individual and official capacity

Defendants.

------------------------------------------------------------------------------X

Plaintiff, Daniil Shevchenko, by his attorneys, Moore Zeman Womble, LLP,

respectfully alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this action seeking compensatory damages, punitive damages,

and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil, statutory

and common law rights guaranteed by the Constitutions of the Unites States and the State of New

York.  Plaintiff also asserts supplemental state law claims for violations of his rights secured by

the Constitution of the State of New York, as well as common law claims of assault, battery,

negligent hiring, training and retention, intentional infliction of emotional distress, negligent

infliction of emotional distress, neglect and failure to provide medical treatment, general

negligence, and failure to protect.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New York.

3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, 1367 and the aforesaid statutory and constitutional provisions.

4.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

## VENUE

5.     Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

6.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## NOTICE OF CLAIM

7.     On November 5, 2015 and within ninety (90) days after the claim arose, plaintiff caused a Notice of Claim to be served upon defendant the City of New York by delivering copies thereof to the person designated by law as a person to whom such claims may be served.

8.     The Notice of Claim was in writing and was sworn to by the plaintiff.

9.     The Notice of Claim contained the name and post officer address of the plaintiff's

counsel, the nature of the claims, the time when, the place where and manner by which the claims

arose, and the damage and injuries claimed to have been sustained.

10.     Defendant City of New York has failed to adjust the claims within the statutory

time period.

11.     This action was commenced within one year and ninety days after the happening

of the event upon which the claims are based.

## PARTIES

12.     Plaintiff DANIIL SHEVCHENKO is a Russian-American male and was at all

relevant times a citizen of the City and State of New York and the United States of America.

13.     Defendant, the CITY OF NEW YORK, was and is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

14.     Defendant, the CITY OF NEW YORK, maintains the New York City Police

Department (hereinafter referred to as "NYPD"), a duly authorized public authority and/or police

department, authorized to perform all functions of a police department as per the applicable

sections of the New York State Criminal Procedure Law, acting under the direction and

supervision of the aforementioned municipal corporation, the CITY OF NEW YORK.

15.     At all times hereinafter mentioned, the individually named defendants, Police

Officer JUANCARLOS PALACIOS, Police Officer BRIAN CASSIDY, Police Officer JORGE

SANTACRUZ, Police Officer MYLES MCKENNA, Sergeant RYAN VAUTRINOT, and

LIEUTENANT WILLIAM MEYER, were duly sworn police officers of said department and were

acting under the supervision of said department and according to their official duties.

16.     At all times hereinafter mentioned, the defendants, either personally or through

their employees, were acting under color of state law and/or in compliance with the official rules,

regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

17.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

18.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

19.     On September 11, 2015, at approximately 11:45 p.m., DANIIL SHEVCHENKO was inside of a bodega at or near the corner of 2nd Avenue and 55th Street in Brooklyn, New York.

20.     At the time, Plaintiff Shevchenko was unlawfully in possession of the cellular phone of an individual named William Agnew.

21.     Mr. Agnew, upon realizing that his phone had been taken without his permission, informed Police Officers from the 72nd Precinct.

22.     Upon information and belief, Mr. Agnew was able to identify the location of his cellular phone by way of a tracking device.

23.     At approximately 11:45 p.m., Mr. Agnew, accompanied by Defendant JUANCARL PALACIOS, and Defendant Police Officer BRIAN CASSIDY enter the bodega at or near the corner of 2nd Avenue and 55th Street in Brooklyn, New York.

24.     After a brief conversation, as memorialized on a video recording, Plaintiff Shevchenko hands Mr. Agnew his cellular phone.

25.     Immediately thereafter, as memorialized on the video recording, Defendant Palacios grabs Plaintiff Shevchenko's left arm and Defendant Police Officer Brian Cassidy grabs Plaintiff Shevchenko's right arm, rendering him unable to protect himself.

26.     As soon as Plaintiff Shevchenko is restrained by Defendant Palacios and Defendant

Cassidy, Mr. Agnew is seen punching Plaintiff Shevchenko repeatedly about the head and body.

27.    Defendants Palacios and Cassidy then also begin punching Plaintiff Shevchenko about the head and body.

28.    Shortly thereafter, as memorialized by the video recording, Defendant Police Officers Myles McKenna, Sergeant Ryan Vautrinot, and Lieutenant William Meyer enter the bodega and participate in the assault on Plaintiff Shevchenko.

29.    After repeatedly punching Plaintiff Shevchenko about the face, head and body, Defendants Palacios, Cassidy, Santacruz, McKenna, Vautrinot and Meyer forcefully pull Mr. Shevchenko out of the bodega.

30.    Once out on the street, the assault against Plaintiff Shevchenko continues.

31.    Defendant Police Officer John Doe then is eventually able to place Plaintiff Shevchenko in restraints, securing his hands behind his back in an over-tightened manner that caused protracted pain and discomfort to Plaintiff Shevchenko.

32.    Defendant Police Officer John Doe then slams Plaintiff Shevchenko to the ground, landing face-first, causing one tooth to break entirely and 3 others to be chipped.

33.    While on the ground, Defendant Police Officer John Doe kicked Plaintiff Shevchenko in the groin.

34.    In addition to the loss of his teeth, the actions of the Defendant Police Officers caused Plaintiff Shevchenko to scrape his forehead, chip a piece of his knee, sprain or break his thumb and suffer pain and bruising about his body.

35.    At no time did Plaintiff Shevchenko resist arrest.

36.    When Defendant Police Officers punched Plaintiff in the head and body, threw him to the ground and kicked him, Plaintiff was not a threat, immediate or otherwise.

37.     No reasonable Police Officer would have perceived Plaintiff's conduct to be aggressive or confrontational such that would require or warrant an officer to intentionally assault Plaintiff.

38.     Despite Plaintiff Shevchenko imploring the officers to stop, they continued to beat and assault him in front of the bodega and a number of witnesses.

39.     Despite Plaintiff Shevchenko's injuries and repeated requests that the handcuffs be loosened or removed, and notwithstanding the obvious signs that Mr. Shevchenko was in excruciating pain, none of Defendants Palacios, Cassidy, Santacruz, McKenna, Vautrinot or Meyer loosened the handcuffs, thereby subjecting Mr. Shevchenko to excruciating pain and discomfort for an extended period of time.

40.     Defendant Police Officers could have avoided punching Plaintiff Shevchenko in the head and body and kicking him and throwing him to the ground but neglected or refused to do so.

41.     Defendant Police Officers used unlawful and excessive physical force upon Plaintiff.

42.     Defendant Police Officers subjected Plaintiff Shevchenko to cruel, unusual, inhumane and degrading treatment.

43.     Defendant Police Officers subjected Plaintiff Shevchenko to unnecessary and wanton infliction of pain.

44.     Defendant Police Officers' conduct was grossly disproportionate to the circumstances then and there existing.

45.     Defendant Police Officers did not need to use physical force and/or inflict blows upon Plaintiff Shevchenko as Plaintiff was not physically threatening to anyone.

46.     Defendant Police Officers did not need to use physical force and/or inflict blows upon Plaintiff Shevchenko in self-defense.

47.     At no point during the time period mentioned herein did Plaintiff Shevchenko neglect or refuse a lawful order of a police officer or rule or regulation of the NYPD.

48.     Mr. Shevchenko was then thrown into the back of a police vehicle at which time he lost consciousness.

49.     Plaintiff Shevchenko awoke on the floor in a cell in the 72nd Precinct in excruciating pain and covered in his own blood.

50.     While confined to the custody, care and control of the NYPD at the 72nd Precinct, Plaintiff repeatedly requested medical attention from Defendant Police Officers as well as unknown NYPD personnel as he was experiencing excruciating pain.

51.     Each of Plaintiff's requests for medical attention was refused.

52.     All of the above occurred while defendant Police Officers failed to intervene in the illegal conduct of one another that was being committed in their presence, and that they each had a meaningful opportunity to stop.

53.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York.

54.     As a result of the foregoing, plaintiff sustained, *inter alia*, physical injuries, emotional distress, embarrassment, and humiliation, and deprivation of his constitutional rights.

55.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training supervising, and disciplining of its employees.

56.     As described herein, Plaintiff Shevchenko suffered physical injuries of an

objectively serious and important nature; however, the NYOD, its agents, servants, and/or employees, including but not limited to Defendant Police Officer Palacios, failed to authorize, make arrangements and provide transportation for, or provide timely and adequate medical care and treatment to Plaintiff Shevchenko.

57.    Plaintiff Shevchenko's medical condition was of such gravity that it can be considered a serious medical condition. Defendants, by ignoring his requests for treatment, acted with deliberate indifference.

58.    As a result of the defendants' deliberate indifference, Plaintiff Shevchenko experienced prolonged and significantly increased pain and suffering.

59.    The aforesaid event is not an isolated incident.  Defendant CITY OF NEW YORK is aware (from lawsuits, notices of claims, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK'S Civilian Complaint Review Board) that many NYPD officers, including defendants, are insufficiently trained regarding the investigation of crimes; the effectuation of arrests; and the treatment of individuals who are in custody.

60.    Defendant CITY OF NEW YORK is further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, defendant CITY OF NEW YORK has failed to take corrective action.  This failure caused the officers in the present case to violate the plaintiffs' civil rights.

61.    Moreover, upon information and belief, defendant CITY OF NEW YORK was aware, prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers.  Despite such notice, defendant CITY OF NEW YORK has retained these officers, and failed to adequately train and supervise them.

62.     As a result of the foregoing, plaintiff DANIIL SHEVCHENKO sustained, *inter alia*, physical injuries, emotional distress, embarrassment, humiliation, and deprivation of his constitutional rights.

## FEDERAL CLAIMS

### FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. §§ 1981 and 1983)

63.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "62" with the same force and effect as if fully set forth herein.

64.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

65.     All of the aforementioned acts deprived plaintiff DANIIL SHEVCHENKO, of the rights, privileges and immunities guaranteed to the citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §§ 1981 and 1983.

66.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

67.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

68.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective

municipality/authority, which is forbidden by the Constitution of the United States.

69.     Defendants violated the Fourth and Fourteenth Amendment when they, as set forth above, ignored, acquiesced, joined and/or were complicit in same, constituted an unnecessary, unreasonable, and excessive use of force.

70.     Said defendants acted with deliberate indifference to Plaintiff Shevchenko's safety, security, health and immediate medical needs.

71.     As a direct and proximate result of the defendants' deliberate indifference to Plaintiff's objectively serious medical condition, the plaintiff's resulting physical, psychological and emotional injuries, pain and suffering were significantly exacerbated.

72.     The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the physical, psychological, and emotional injuries he suffered.

73.     The actions of the defendants were malicious.

74.     The City of New York and the NYPD, their agents, servants, and/or employees, including but not limited to the defendant officers, by reasonable diligence, could have mitigated the plaintiff's injuries had they intervened in the aforesaid unlawful conduct and/or protected Plaintiff Shevchenko.

75.     The City of New York and the NYPD, their agents, servants, and/or employees, including but not limited to the defendant officers, violated Plaintiff Shevchenko's Constitutionally-protected civil rights by:

        a.  Harassing and intimidating Plaintiff;

        b.  Assaulting and battering Plaintiff;

        c.  Using unreasonable and excessive physical force on Plaintiff;

    d.  Failing to intercede on behalf of the plaintiff to prevent the Constitutional violations aforesaid, despite having an opportunity to do so, but due to their deliberate indifference declined or refused to do so;

    e.  Failing to provide Plaintiff with timely and due medical care and treatment;

    f.  Denying the Plaintiff equal protection of the laws;

    g.  Failing to protect Plaintiff; and

    h.  By subjecting Plaintiff to cruel and unusual punishment.

76.    As set forth above, said defendants were deliberately indifferent to Plaintiff's medical condition by their failure to provide access to timely and appropriate medical care; their conduct was so grossly incompetent, inadequate and excessive as to shock the conscience, and were so intolerable to fundamental fairness; and maliciously and sadistically used force to cause harm.

77.    As a result of the foregoing, Plaintiff was caused to be subjected to the deprivations of rights, privileges and/or immunities secured by the Constitution and statutes of the United States of America and has been damaged thereby.

78.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

79.    As a result of the foregoing, plaintiff DANIIL SHEVCHENKO sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
(Failure To Intervene Under U.S.C. § 1983)

80.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "79" with the same force and effect as if fully set forth herein.

81.    All of the aforementioned acts of defendants, their agents, servants and employees

were carried out under the color of state law.

82.     Defendants had an affirmative duty to intervene on behalf of plaintiff DANIIL SHEVCHENKO whose constitutional rights were being violated in their presence by a civilian and other officers.

83.     The defendants failed to intervene to prevent the unlawful conduct described herein.

84.     As a result of the foregoing, plaintiff DANIIL SHEVCHENKO was put in fear of his safety, was battered and assaulted, he was humiliated, and subjected to physical restraints.

### THIRD CAUSE OF ACTION
(Excessive Force Under U.S.C. § 1983)

85.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

87.     While in the course of their duties and while acting under color of law, defendants affected a seizure of plaintiff DANIIL SHEVCHENKO by intentionally using excessive physical force against plaintiff, including but not limited to placing him in restraints, kicking, punching, and throwing him to the ground; causing injury, including but not limited to, loss of teeth, swollen knees, bruising to both sides of his ribs, a lump on the back of his head, broken and/or swollen right thumb, pain to his groin region, and pain to his head.  He is still being treated for anxiety relating directly to this incident.

88.     The physical force of the individual officer defendants on plaintiff DANIIL SHEVCHENKO was objectively unreasonable.

89.     By virtue  of the foregoing, defendants used excessive force on plaintiff DANIIL

SHEVCHENKO causing him injury requiring further medical attention for his injuries.

## FOURTH CAUSE OF ACTION
### (Failure to Protect Under U.S.C. § 1983)

90.     Plaintiff repeats, reiterates, and realleges paragraphs "1" through "89" as if fully set forth herein.

91.     All defendants, their agents, servants and employees, owed a duty to care and protect Plaintiff while he was in their custody, control and care.

92.     As set forth above, all defendants failed to guarantee the safety of Plaintiff Shevchenko when he was in their custody.

93.     As set forth above, all defendants failed to protect Plaintiff from known and dangerous harms, including aggrieved civilians, themselves, and each other.

94.     As set forth above, by restraining Plaintiff while a third party attacked Plaintiff Shevchenko, then further participating in the assault and battery, the defendants caused and created the dangerous conditions which gave rise to the incident and injuries alleged herein.

95.     As set forth above, each of the defendant officers failed to intervene, mitigate and/or stop the subject incident at any time during the happening of the incident and did so with deliberate indifference to Plaintiff Shevchenko's needs.

96.     As set forth above, the defendants failed to make timely and adequate medical care and treatment to Plaintiff following the subject assault and battery and did so with deliberate indifference to Plaintiff Shevchenko's needs.

97.     As set forth above, all defendants knew of and consciously disregarded excessive risks to Plaintiff's security, health and safety and did so with deliberate indifference to Plaintiff Shevchenko's needs.

98.     All defendants failed to report the abusive conduct of the defendant officers to supervisors or other authorities and did so with deliberate indifference to Plaintiff Shevchenko's needs.

99.     That due to said defendants' failures to protect the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

100.     As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees and disbursements.

### FIFTH CAUSE OF ACTION
(Violation of the Equal Protection Clause under 42 U.S.C. § 1983)

101.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "100" with the same force and effect as if fully set forth herein.

102.     Defendants, perpetrated an unnecessary, unreasonable, and excessive use of force against plaintiff DANIIL SHEVCHENKO and failed to intervene, protect or prevent such treatment committed in their presence by other NYPD officers.

103.     By virtue of the foregoing, plaintiff DANIIL SHEVCHENKO was deprived of his rights under the Equal Protection Clause of the United States Constitution.

### SIXTH CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983)

104.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "103" with the same force and effect as if fully set forth herein.

105.     The supervisory defendants personally caused plaintiff DANIIL SHEVCHENKO constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinates.

### SEVENTH CAUSE OF ACTION
(Municipal Liability)

106.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "105" with the same force and effect as if fully set forth herein.

107.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipal/authority, which is forbidden by the Constitution of the United States.

108.    The aforementioned customs, policies, usages, practices, procedures and rules of the New York City Police Department included, but were not limited to, using excessive force and when effectuating an arrest.  In addition, the CITY OF NEW YORK engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, disciplining and supervising its employees that was the moving force behind the violation of plaintiff DANIIL SHEVCHENKO'S rights as described herein.  As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to the acts and conduct complained of herein.

109.    The City's continuing failure to deter police misconduct has led to an ever increasing number of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1]  In the past ten years, the City of New York has paid nearly a billion dollars from lawsuits brought against the NYPD.[2]

---

[1]  Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on January 24, 2014.

[2]  "NYPD gives quite the payday; AP report reveals police have dolled out $1B to resolve lawsuits," by Associated Press Writers Colleen Long and Jennifer Peltz via Daily News wire Report, http://www.nydailynews.com/new-

110.    The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan  547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

111.    However, the City of New York has isolated NYPD officers like Police Officer Juancarl Palacios from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.  Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.  In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[3]  This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false

---

york/nypd-payday-ap-report-reveals-police-dolled-1b-resolve-lawsuits-article-1.189671, October 15, 2010 last visited on January 27, 2014.
[3] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on January 27, 2014.

arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

112.     The only named officers in this complaint is Police Officer Juancarl Palacios. Police Officer Juancarl Palacio was the police officer who was the alleged author of the criminal complaint written against the plaintiff in the matter the occurred on September 11, 2015.  None of the other officers are able to be identified at this point because on September 11, 2015, Mr. Shevchenko was being assaulted by at least 6 officers and was in no position to collect identifying information. It is believed that all officers present for the September 11, 2015 incident were officers within the 72nd Precinct.

113.     The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

114.     Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and failure to intervene by plaintiff.

115.     Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual

officer or of a precinct.  Without this notification, improper practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

116.    All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

117.    The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

118.    Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

119.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs numbered "1" through "57" with the same force and effect as if fully set forth herein.

## EIGHTH CAUSE OF ACTION
### Assault and Battery Under the Laws of the State of New York

120.    Plaintiff repeats, reiterates, and realleges paragraphs "1" through "119" as if fully set forth herein.

121.    By the actions described above, defendants did inflict assault and battery upon plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage the plaintiff and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

122.    As a result of the foregoing, plaintiff suffered injuries and damages as set forth above.

## NINTH CAUSE OF ACTION
### Neglect and Failure to Provide Medical Attention
### Under the Laws of the State of New York

123.    Plaintiff repeats, reiterates, and realleges paragraphs "1" through "122" as if fully set forth herein.

124.    As set forth above, the defendants, their agents, servants and/or employees, including but not limited to their officers and their supervisors, knew that Plaintiff had sustained serious and significant physical injuries from the incidents alleged aforesaid.

125.    Plaintiff made numerous complaints to the defendants that he was injured, that he was in a tremendous amount of pain, and that he was experiencing other serious ailmemts following the subject incidents.

126.    Plaintiff made numerous requests for medical attention which were ignored by said defendants.

127.    The defendants are the initial stewards of Plaintiff's access to medical care –
possessing, *inter alia*, exclusive or near-exclusive control and decision-making authority as to if,
when and how Plaintiff is permitted access to medical care, as well as approving and securing
transportation to take Plaintiff from jail to an off-site medical provider.

128.    As set forth above, the defendants did delay and/or deny Plaintiff's access to
timely medical care.

129.    By the aforesaid conduct and under the color of law, these defendants acted with
malice, or at least deliberate indifference, in failing to timely secure the medical attention
required for Plaintiff's serious injuries, in a manner that deprived the Plaintiff of his
constitutional and statutory rights and perpetuated and exacerbated his physical and mental pain
and suffering.

130.    By the aforesaid conduct, these defendants were negligent, careless and reckless
in failing to timely secure the medical attention required for Plaintiff's serious injuries.

131.    By delaying and/or failing to act, said defendants knowingly disregarded an
excessive risk to Plaintiff's health and safety.

132.    Any reasonable person would perceive Plaintiff' medical needs to be important
and worthy of treatment.

133.    As set forth above, the delay and/or denial of access to timely medical care by the
defendants was intentional and punitive so as to cause the Plaintiff further physical injury, pain
and suffering.

134.    As a direct and proximate result of said defendants' conduct, the plaintiff was
caused to sustain further physical, psychological and emotional injuries, pain and suffering.

135.     As set forth above, the acts and omissions committed by the defendants were the result of policies and customs promulgated by the City of New York and the NYPD.

136.     The aforesaid acts of the defendants, their agents and/or employees, were sufficiently serious to constitute violations of Plaintiff's statutory, civil and common law rights secured by the Constitution of the State of New York, and directly and proximately caused damage to the claimant.

137.     As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

## TENTH CAUSE OF ACTION
### Intentional and Negligent Infliction of Emotional Distress
### Under the Laws of the State of New York

138.     Plaintiff repeats, reiterates, and realleges paragraphs "1" through "137" as if fully set forth herein.

139.     The aforesaid acts of the defendants, acting individually and/or in conjunction with other defendants, were intentional, malicious and excessive, and served no reasonable or legitimate law enforcement interest.

140.     The defendants' intentional, reckless and/or negligent infliction of emotional and mental distress constituted misconduct of an egregious and outrageous nature that exceeds all bounds usually tolerated by society and unreasonably endangered Plaintiff's physical safety.

141.     As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

142.     As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs and disbursements.

## ELEVENTH CAUSE OF ACTION

Failure to Protect
Under the Laws of the State of New York

143. Plaintiff repeats, reiterates, and realleges paragraphs "1" through "142" as if fully set forth herein.

144. All defendants, their agents, servants and employees, owed a duty to care and protect Plaintiff while he was in their custody, control and care.

145. As set forth above, all defendants failed to protect Plaintiff from known and dangerous harms, including aggrieved civilians, themselves, and each other.

146. As set forth above, by restraining Plaintiff while a third party attacked Plaintiff Shevchenko, then further participating in the assault and battery, the defendants caused and created the dangerous conditions which gave rise to the incident and injuries alleged herein.

147. As set forth above, each of the defendant officers failed to intervene, mitigate and/or stop the subject incident at any time during the happening of the incident and did so with deliberate indifference to Plaintiff Shevchenko's needs.

148. As set forth above, the defendants failed to make timely and adequate medical care and treatment to Plaintiff following the subject assault and battery and did so with deliberate indifference to Plaintiff Shevchenko's needs.

149. As set forth above, all defendants knew of and consciously disregarded excessive risks to Plaintiff's security, health and safety and did so with deliberate indifference to Plaintiff Shevchenko's needs.

150. All defendants failed to report the abusive conduct of the defendant officers to supervisors or other authorities.

151.    That due to said defendants' failures to protect the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

152.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees and disbursements.


### TWELFTH CAUSE OF ACTION
Respondeat Superior
(Against the City of New York)

153.    Plaintiff repeats, reiterates, and realleges paragraphs "1" through "152" as if fully set forth herein.

154.    The Individual Officer Defendants were employees of the City at the time of the incidents alleged herein and each was acting at all relevant times within the scope of his or her employment with the City.

155.    The City is therefore vicariously liable for the tortious acts as described and alleged herein of the Individual Officer Defendants under the common law doctrine of respondeat superior.

156.    As a result of the foregoing, plaintiff DANIIL SHEVCHENKO is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief against the defendants:

a.    Compensatory damages in an amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

   d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated:  New York, New York
   February 2, 2016

By: Benjamin Zeman

    Benjamin Zeman
    Attorney for Plaintiffs
    Moore Zeman Womble, LLP
    66 Willoughby St., 2nd Floor
    Brooklyn, New York 11201
    (T) (718) 514-9100
    (F) (917) 210-3700
    zeman@brooklynattorney.nyc